**Tama Lynn WOODS, Appellant,**

**v.**

**Ida GOULD, Respondent.**

**No. 24776.**

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1968.

Respondent's Motion for Rehearing or to Transfer Denied March 11, 1968.

Sheridan, Sanders, Millin, Peters, Carr & Sharp, Kansas City, for appellant.

Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for respondent.

HOWARD, Presiding Judge.

This suit was brought by appellant through her father as next friend for damages resulting from falling from a second story porch. A jury trial resulted in a judgment for appellant in the amount of $10,000.00. The trial court, on motion, set this judgment aside and entered judgment for respondent in accordance with her motion for directed verdict. We shall refer to the parties as they appeared below.

Plaintiff was approximately two years old at the time she fell from the porch. Her parents had rented a second floor apartment from defendant a little more than a month before the fall. This apartment was in a three story building which contained two apartments on each floor plus a janitor's quarters in the basement. Plaintiff fell on July 11, 1965. It was a warm, sunny day. Her father had left the apartment sometime before and was working on his car in the alley behind the apartment house. Shortly prior to the fall, plaintiff's older sister left the apartment and went down to the alley where her father was. Plaintiff's mother was in the living room sweeping. She last saw plaintiff playing in the bedroom. She did not know that plaintiff had left the apartment. Plaintiff's father had just got out from under his car when he heard the older girl screaming and calling plaintiff's name and found plaintiff lying in the concrete alley immediately below the back porch of the apartment building. A woman in a neighboring apartment building was on her back porch and looking along the back of the buildings and saw plaintiff fall through or over the rail of the second floor porch. There was no direct evidence as to how plaintiff got out of the apartment or exactly how she fell.

A photograph of the back of the apartment building shows a back porch common to the two apartments on each of the three floors of the apartment building with stairways running up and down through the porches. The railing consists of three 2 x 4 boards running horizontally. From the exhibits introduced in evidence, it appears that the 2 x 4 board forming the bottom rail is approximately four inches from the floor. There is a space of approximately 8½ or 9 inches between the bottom 2 x 4 and the middle 2 x 4 and a space of approximately 12 inches between the middle 2 x 4 and the 2 x 4 forming the top rail of the bannister. This top rail is approximately 34 inches high.

Plaintiff's parents testified that when they rented the apartment, the screen door leading from the apartment to the porch was in need of repair. The screen at the bottom was torn or pushed loose and the latch on the screen door did not hold, so that the door could be pushed open even when it was supposed to be latched. There was also a wooden door leading from the apartment to the back porch. The father testified that he closed the wooden door behind him and that it latched. Plaintiff's older sister was approximately five years old at the time of the trial. She did not testify and there is no evidence as to how she left the doors when she left the apartment and went downstairs. Likewise, there is no evidence as to whether plaintiff pushed the screen door open or crawled through the defective screen. Plaintiff alleged and

submitted negligence on the part of defendant in two respects: (1) Failure to repair the screen door as promised, and (2) failure to maintain the common porch in a reasonably safe condition for children such as plaintiff.

As to the screen door, plaintiff contends that the promise of the landlord to repair created a duty to repair, the negligent breach of which gives rise to a cause of action in tort. In support of this contention plaintiff relies on Green v. Kahn, Mo., 391 S.W.2d 269, and Tucker v. Taksel, Mo.App., 345 S.W.2d 385. In Green v. Kahn, the landlord supplied a gas cooking stove for the purpose of cooking and heating the apartment. On a cold night the stove was left burning with an open flame 3 to 3½ inches high. Plaintiff's mother had hung some bed clothes on a line over the stove. During the night a fire started in which the mother was killed and plaintiff was injured. The court found that the gas stove, the pipes leading to it, etc., remained under the control of the landlord and that the negligence in furnishing and maintaining such an open flame stove for heating was one cause of plaintiff's injuries and that she could recover from the landlord. In Tucker v. Taksel, the young son of the tenant fell out of an apartment window when he braced himself against the window sill which gave way falling out into the yard. In this case, the landlord had retained a key to the apartment for the purpose of making repairs as needed. The court stated that when the defendant, as part of the leasing agreement, promised to make repairs, retained a key for access to the apartment for that purpose and did make repairs but negligently failed to repair the defective window sill, that this amounted to a keeping of such control as to impose the duty by the landlord to maintain the premises in a reasonably safe condition and that a negligent failure to perform needed repairs gave rise to a cause of action in tort.

Since the case at bar was submitted, the Supreme Court of Missouri in Lemm v. Gould, 425 S.W.2d 190 (January 8, 1968) has decided a case involving much the same contention. In that case, the young son of the tenant fell from a fourth floor porch by squeezing between a corner post and a baluster in the porch railing. Some nine years before the date of the fall, the porch had been remodeled and the round corner post had been boxed in to make it square. In doing so, one baluster was removed and not replaced. This increased the maximum distance between the post and baluster from 5 to 7 inches. Liability was predicated on the promise of defendant to repair plus retention of the control of the leased premises for purposes of making repairs. This porch was not a common porch but was solely appurtenant to the apartment in which plaintiff lived. In considering this matter, the Supreme Court said:

"Plaintiffs seek to recover under the rule that 'a landlord is under a duty to exercise ordinary care to keep the portions of the premises which he retains in his control in a reasonably safe condition for the use intended and is liable for damages for personal injuries resulting from his failure to perform that duty.' Peterson v. Brune, Mo.Sup., 273 S.W.2d 278, 280 [1]. Plaintiffs' theory is that defendants retained control of the porch for the purpose of making repairs in order to make it safe for the Lemm children to play on, and therefore defendants were duty bound to make the porch reasonably safe for the use of Michael.

"The possession or control which must be shown in order to make a landlord liable under this rule is not to be found merely in the obligation of the landlord to make repairs or the right to enter the premises. Lahtinen v. Continental Bldg. Co., 339 Mo. 438, 97 S.W.2d 102, 106 [3]. There must be something more—some additional fact or facts from which a jury could infer that under the agreement the tenant gave up and surrendered his right to exclusive possession and control and yielded to the landlord some degree or measure of control and dominion over

the premises; some substantial evidence of a sharing of control as between landlord and tenant. In order to be bound to keep the premises in a reasonably safe condition the landlord need not have reserved such a degree of control as to be entitled to admit or exclude others from the premises. It is sufficient that he retained a general supervision over the premises for a limited purpose such as the making of repairs or alterations, and the right to enter the premises and make repairs upon his own initiative and responsibility.

"There were sufficient facts in evidence to entitle the jury to draw the inference that these landlords were vested with this degree of control and dominion over the premises. In addition to the agreement to repair and replace, the landlords retained a key to the apartment not only for emergency uses but also to use to enter the apartment 'to do any repairs that they might think necessary.' This gave them the right to make repairs on their own initiative and responsibility, without obtaining the consent of the tenants. This carried with it the implied right to enter for the purpose of inspecting the premises to determine what repairs were necessary. This reservation of right was not alone for the benefit of the tenants but enured to the benefit of the landlords because it entitled them, during the rental period, to take whatever action in the field of repairs and replacements deemed necessary to prevent waste and to protect their reversionary interests. Along with this right and benefit goes the correlative responsibility to keep the premises in reasonably safe condition for the use intended.

"Illustrating and emphasizing the fact that the landlords reserved this degree of control there is the further fact that the landlords actually made repairs and replacements prior to the injury, pursuant to the agreement. A legitimate inference from the evidence is that it was agreeable with the tenants for the representative of the landlords to use the retained duplicate key to gain access to the premises, in the absence of the tenants from the apartment, without seeking or gaining their permission prior to their entry, and to make such repairs (the window, and the installation of the screening on the porch) or perform a service (spraying for bugs) without consulting the tenants. There is no evidence of any objection on the part of the tenants to this practice. From their apparent acquiescence it can be inferred that the landlords' free access to the premises for these purposes was part and parcel of the understanding and agreement between the parties."

■ The above case cited and quoted from Tucker v. Taksel, supra, with approval. From these cases, it is apparent that the necessary factor giving rise to a cause of action in tort for negligent failure of the landlord to maintain the demised premises in a reasonably safe condition for the use intended is the retention of control by the landlord plus a promise to repair for which promise there is consideration, see Underwood v. Moloney, Mo.App., 397 S.W. 2d 18. This seems to follow the general rule in the United States in such situations, see 52 C.J.S. Landlord and Tenant § 417.

■ In the case at bar, there is not one iota of evidence that defendant retained control over the apartment rented to plaintiff's parents. It was a furnished apartment renting for $20.00 per week and defendant furnished lights, gas, heat and water. Plaintiff's mother and father both testified somewhat equivocally, that defendant promised at the time of renting to repair the screen door. The defendant denied this specific promise but admitted that it was understood that she would make repairs. As to repairs, she testified that she would make "Any repairs in the apartment whenever it is needed at the time. When you rent with children you have to keep it up." From this the jury could well find a promise to repair made at the time of the letting and thus supported by consideration.

However, there is no evidence that the landlord retained a key to the apartment or in any other way reserved any control or right to enter the apartment of plaintiff's parents. Absent such control in the landlord, no cause of action arises in tort for negligent breach of such promise to repair. It is true that the screen door led from the apartment to the common porch. It, in fact, fitted flush with the outer wall of the apartment and was accessible from the common porch. If it could not be latched, as maintained by plaintiff, then the landlord could reach and repair the door without entering the apartment. However, from the cases heretofore cited, it does not appear that the matter of keeping control of the leased premises by the landlord is solely for access to the thing to be repaired. Rather it is the keeping of control by the landlord which, together with the promise to repair, creates the duty to repair which otherwise the landlord does not have. Without evidence of control, defendant cannot be held liable in tort to plaintiff. For this reason, there is not sufficient evidence to support plaintiff's submission of defendant's negligence in failing to repair the screen door.

Plaintiff also submitted defendant's negligence in failing to maintain the railing on the common porch in a condition reasonably safe for the use intended. The porch was used by the tenants of both apartments on the second floor as a means of reaching the stairway which leads to the ground and up to the third floor. There can thus be no dispute that this porch was intended for and in fact used in common by two or more tenants, and under the law, it remained in the control of defendant landlord. Under such circumstances, the landlord has a duty to maintain the areas used by two or more tenants in common in a condition reasonably safe for the use to be made thereof and if he negligently fails to do so, he is liable in tort to those injured because of such negligence who are rightfully upon the premises. See McGinley v. Alliance Trust Co., 168 Mo. 257, 66 S.W.

153; Peterson v. Brune, Mo., 273 S.W.2d 278; Fitzpatrick v. Ford, Mo., 372 S.W.2d 844; Karp v. Barton, 164 Mo.App. 389, 144 S.W. 1111; Miller v. Geeser, 193 Mo. App. 1, 180 S.W. 3; and Buchanan v. Wolff, Mo.App., 105 S.W.2d 26. In the present case, defendant admitted that she habitually rented the apartments in this and the adjacent buildings to families with children and that she knew plaintiff's parents had several small children. The picture in evidence reveals that a small child could easily fall through the openings in the railing. From this, a jury could find that it was not reasonably safe for the use of small children of the tenants whom defendant could reasonably anticipate being on the premises. Injury such as plaintiff suffered could reasonably be foreseen. Under such circumstances, the trial court erred in entering judgment for defendant.

Defendant contends that since she did not do anything to the porch railing but left it in the same condition in which it had been, she is not liable. In this contention she cites and relies on Stewart v. Zuellig, Mo., 336 S.W.2d 399, wherein it was contended that a child fell through a space in a similar railing. However, that porch was completely appurtenant to and could be reached only from the apartment of the plaintiff's parents. It was not a common porch and the principles there applied are not applicable to the case at bar. The language relied on by defendant was used by the court to point out that when the landlord repaired the supports to the porch, he did not touch or repair the railing and therefore liability could not be imposed on the landlord for the negligent making of repairs. Defendant also cites Ullrich v. Kintzele, Mo.App., 297 S.W.2d 602. In that case an adult plaintiff was picking up his garbage can from the area provided therefor at the rear of the apartment house yard when he apparently slipped on some refuse, stepped on a garbage can lid and fell over a retaining wall into an alley below. This has absolutely no applicability to the case at bar. As it is pointed out in Lemm v. Gould, supra, 425

S.W.2d 190 (Mo.Sup.Ct. January 8, 1968), the maintaining of a porch rail with openings sufficient to allow a small child to fall through may support a cause of action in negligence. The court said: "Our conclusion is that under the law defendants had a duty to maintan the porch in a reasonably safe condition for the use intended." Plaintiffs' judgment based upon negligent breach of such duty was affirmed.

 Plaintiff contends that her submission of negligence as to the screen door and her submission of negligence as to the porch railing in the conjunctive is not a violation of the prohibition against conjunctive submission found in MAI 1.02 and that her judgment may be reinstated even though the evidence supports one submission and does not support the other submission. At a different place in her brief, plaintiff contends that the two submissions of negligence are merely separate parts of one entire theory of negligence and that their conjunctive submission is therefore proper. We cannot agree. These two contentions are self-destructive. They cannot both be true. In any event, the judgment may not be reinstated. If the two submissions do constitute two aspects of one entire theory of negligence, then both must be sustained by the evidence. See Coates v. Dewoskin, Mo.App., 379 S.W.2d 146. If the two submissions are separate theories of negligence, then this submission flies directly into the face of the prohibition against conjunctive submissions found in MAI 1.02. In either event, the failure of the evidence to support the submission of negligence as to the screen door constitutes error in the giving of the instruction and prevents us from reinstating plaintiff's judgment.

The trial court gave no reason why it set aside plaintiff's judgment and entered judgment for the defendant. Under these circumstances, plaintiff in her brief contends that a two-year-old child cannot be held guilty of contributory negligence. This assertion is not controverted by defendant and we agree therewith.

It therefore appears in the case at bar that a case was made for the jury as to the negligence of defendant in maintaining the railing here in question with openings through which a child could easily fall. Because of the error in submitting the issue of negligence as to the screen door, plaintiff's judgment cannot be reinstated. However, the trial court erred in entering judgment for the defendant. The judgment is therefore reversed and the cause remanded for new trial.

CROSS, J., and CHARLES S. SHANGLER, Special Judge, concur.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.