Earl JESSIE, Jr., Plaintiff-Respondent,

v.

**BI-STATE DEVELOPMENT AGENCY
and Marshall Mosley,
Defendants-Appellants.**

No. 49664.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 1, 1986.

Motion for Rehearing and/or Transfer
Denied April 29, 1986.

Application to Transfer Denied
June 17, 1986.

Mark G. Arnold, St. Louis, for defendants-appellants.

Ray E. White, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

Earl Jessie, Jr., respondent, brought this action for personal injuries arising out of an accident in which a bus owned by appellant, Bi-State Development Agency, and operated by appellant, Marshall Mosley, ran over his leg. The jury entered a judgment in favor of the respondent, assessed his damages at $200,000 and apportioned the fault at 51% to the appellants and 49% to the respondent. We affirm.

Appellant contends that the respondent did not introduce sufficient evidence to support his lookout instruction. In determining whether there was sufficient evidence to support the submission of an instruction, we consider the evidence that is most favorable to the prevailing party, giving that party the benefit of all reasonable inferences and disregarding any of the unsuccessful party's evidence if it does not support the instruction. *Welch v. Hyatt,* 578 S.W.2d 905, 912 (Mo. banc 1979).

The respondent testified that at approximately 11:00 p.m. on the evening of August 18, 1982, he was waiting at the bus stop on St. Louis Avenue, east of Spring Avenue, to board a westbound Bi-State bus. The intersection was well-lit, and the weather was dry and clear. After he had waited

seven or eight minutes, the bus arrived, but it stopped with its front door some distance past the bus stop sign, near the intersection, to allow a passenger to exit from the rear door.

The respondent stated that he had started to walk toward the front door of the bus, when the bus began to pull away from the curb. The respondent ran after the bus yelling for the bus to stop and beating on the front door with his fist. By this time he had run into the intersection. As the bus maneuvered into the street and away from the curb at approximately 3–5 m.p.h., respondent's arm was struck and he fell to the street. Although he attempted to roll away, the rear wheel of the bus ran over his leg. The bus driver continued on his route unaware of the accident until some time later when he received a radio dispatch from the bus company.

The bus driver testified that he had observed people through his rear view mirror "on a thousand" days before this accident running after his bus, yelling for him to wait and banging on the bus. He further testified that he realized this was dangerous. On the night of the accident, the bus driver did not see the respondent waiting at the stop. He did not hear him banging on the door or yelling or observe him in his mirror, although he testified he was able to see the area along the outside of the bus in the rear view mirror because of his height and the manner in which he kept the mirror angled.

Appellants' witness, Mr. Dixon Bell, was the passenger who exited through the rear door. Mr. Bell said that he alighted from the rear door of the bus, turned and began to walk toward the front of the bus. The respondent, running and shouting for the bus to stop, passed between Mr. Bell and the bus. The witness testified that the respondent reached a point just in front of the rear door and struck the window there. It appeared to the witness that the respondent fell because he lost his balance as the bus moved away from the curb lane.

A bus driver is under a continuous duty to exercise the highest degree of care at all times and places and to observe all conditions and circumstances which might reasonably affect the safety of persons on or approaching the road. *Schilling v. Bi-State Development Agency*, 414 S.W.2d 818, 823 (Mo.App.1967).

In the case at bar, the bus driver testified that he had passed the bus stop sign before stopping to let Mr. Bell off the bus. He stated that he did not see the respondent waiting there nor did he look in his rear view mirror to see if anyone was approaching from the rear of the bus.

Under these circumstances, it was not unreasonable for the jury to find that the failure of the bus driver to check for potential passengers was negligent. "What constitutes negligence in failing to keep a careful lookout, in any particular direction at any certain time and place, depends upon the then existing circumstances and conditions, and is usually a jury question." *Clark v. McCloskey*, 531 S.W.2d 36, 37 (Mo.App.1975).

The appellants argue that even if the bus driver should or could have known of the respondent's position, there was not sufficient evidence that the bus driver could have avoided the injury. The bus had stopped to allow a passenger to exit. If the bus driver had checked for potential passengers, he would have seen the respondent waiting and subsequently approaching before he started the bus in motion. Where a party is charged with the duty to look, he must be held to have seen what looking would reveal. *Gerdel v. Broccard*, 428 S.W.2d 492, 495 (Mo.1968).

Moreover, we have held that it is "sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury." *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo.App.1983). Because the bus driver

failed to keep a careful lookout, he did not see the respondent waiting at the bus stop. Fearing that the bus would leave without him, the respondent ran after the moving bus. The situation that developed as a result of the bus driver's failure to look was inherently dangerous, and in this case, resulted in severe injury.

■ The appellants' second contention is that the trial court erroneously and prejudicially allowed the respondent to argue an issue that had not been submitted to the jury. The respondent was allowed, over the appellants' objection, to argue that the bus driver was negligent in pulling the bus away from the curb before checking to see if any potential passengers were approaching the bus from the rear. Whether the bus driver was negligent under the circumstances in failing to keep a careful lookout is a jury question. *Clark*, 531 S.W.2d at 37. The respondent was correctly allowed to make this argument to the jury because it was relevant to the question of whether the driver's failure to look to the rear constituted negligence under the particular circumstances of this case.

In *Huckstep v. Richards*, 609 S.W.2d 731 (Mo.App.1980), a verdict was affirmed on the basis that under the circumstances, the defendant's negligent failure to keep a careful lookout to the rear before starting his bus in motion resulted in the death of a child who had just alighted from the bus. The argument that the bus driver failed to look to the rear made in this case is similar. It was for the jury to consider the facts and determine whether the failure to look to the rear constituted negligence on the part of the bus driver under the circumstances. The argument is within the scope of the lookout instruction submitted to the jury.

Accordingly, we affirm the judgment of the trial court.

CRANDALL, P.J., and CARL R. GAERTNER, J., concur.