**Pauline BROWN, Plaintiff-Appellant,**

**v.**

**NATIONAL SUPER MARKETS, INC., Sentry Security Agency of St. Louis, Inc. and T.G. Watkins, Defendants-Respondents.**

**No. 51634.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 7, 1987.

Motion for Rehearing and/or Transfer Denied May 20, 1987.

Application to Transfer Denied July 14, 1987.

Daniel C. Aubuchon, Gary W. Kullmann, St. Louis, for plaintiff-appellant.

Ben Ely, Jr., St. Louis, for National Super Markets.

Sam P. Rynearson, St. Louis, for Sentry Sec. Agency of St. Louis & T.G. Watkins.

REINHARD, Judge.

Plaintiff appeals after a jury verdict in favor of defendants on plaintiff's claim that defendants negligently failed to protect her from an assault by an unknown third party on defendant National's parking lot. We affirm.

This case has been before us previously. *Brown v. National Super Markets, Inc.,* 679 S.W.2d 307 (Mo.App.1984). Plaintiff's petition asserted that while she was on National's premises she was assaulted, battered, and shot by an unknown assailant as a direct and proximate result of the negligence of the defendants. She also alleged that in the two years prior to the assault there were sixteen reported robberies involving a firearm, seven incidents of reported strong arm robberies, and 136 other reported crimes on National's premises. Plaintiff maintained that this known criminal activity created "special facts and circumstances" which gave rise to a duty on the part of the defendants to protect her against assault. Defendants denied that these allegations of prior crimes constituted "special circumstances" giving rise to a duty to protect plaintiff from injuries caused by the criminal activity of an unknown third party.

We held that the trial court erred in granting summary judgment and that the plaintiff pled a cause of action. This holding was based upon a theory that, notwithstanding the general rule that a business owner has no duty to protect patrons against the intentional criminal conduct of unknown persons, the duty can arise where there is a special relationship, such as inn-keeper-guest, or special facts and circumstances. Included among the special facts and circumstances was the frequent and recent occurrence of violent crimes on the business premises. *Brown,* 679 S.W.2d at 309.[1]

At the trial, the evidence revealed that on August 6, 1980, at about 3:00 p.m., plaintiff parked her automobile near the middle of the west parking lot of National's store at 4331 Natural Bridge Avenue in St. Louis. When she returned to her car from the store and began to enter the vehicle, another automobile pulled alongside her. A man jumped out from the passenger side of the second automobile and told her to "get back in that car, lady." When plaintiff attempted to run back to the store, the man grabbed her arm, said, "Well, I got to shoot you," shot her once in the side, and fled. Plaintiff suffered serious injury.

The jury heard evidence that 22 violent crimes had been committed on National's premises during the 22½ month period immediately preceding the assault on plaintiff. There also was evidence that for at least two years prior to the shooting, one armed uniformed guard from Sentry was on duty at all times the National store was open for business. National introduced into evidence a weekly time report listing the Sentry security guards on duty from August 2 to August 8, 1980, the week appellant was shot. On this list were T.G. Watkins and Tom Saulsberry, both of whom testified at trial, and five other security guards who did not testify at trial. Watkins and Saulsberry gave conflicting accounts regarding the instructions each received about providing security on the parking lot. Watkins testified that he was specifically instructed not to go out on the parking lot; Saulsberry testified that he and other guards regularly were out on the parking lot. Plaintiff testified she had shopped at the store almost daily and had

---

1. While we have been confronted previously with the "special facts and circumstances" exception to the general rule, this is the first case we review after a jury trial. In addition to *Brown,* 679 S.W.2d 307, *see e.g. Warren v. Lombardo's Enterprises, Inc.,* 706 S.W.2d 286 (Mo. App.1986); *Vorbeck v. Carnegie's at Soulard, Inc.,* 704 S.W.2d 296 (Mo.App.1986); *Nappier v. Kincade,* 666 S.W.2d 858 (Mo.App.1984); *Meadows v. Friedman Railroad Salvage Warehouse,* 655 S.W.2d 718 (Mo.App.1983).

never seen a security guard on the store's parking lot.

Plaintiff contends that the trial court erred in excluding evidence of 14 purse snatchings that the court concluded did not involve physical contact with the victims and evidence of all other prior non-violent crimes on National's premises. Immediately prior to trial, the court conducted a hearing in chambers on National's motion in limine by which it sought to exclude from evidence all police reports of crimes which had occurred on National's premises and a police department computer printout which listed those crimes. The court ruled it would admit into evidence only police reports of prior violent crimes that had occurred on the premises. The court defined violent crimes as "assaults, robberies, murder, rape, things such as that, that require some attempt at bodily harm or bodily harm together with whatever else may have occurred, such as a robbery."

Specifically excluded by the trial court's ruling were reports of purse snatchings that did not involve bodily harm, incidents where bodily harm occurred incident to a criminal's escape attempt, crimes involving property only, and the entire computer printout of reported crimes.[2] The court admitted police reports of the 22 violent crimes and also permitted testimony about some of the details of each, including the nature of the offense and the weapon used, if any. The court also allowed testimony from the two victims of one of the crimes.

Determination of the relevance of evidence is within the discretion of the trial court, and the court's determination will be upheld on appeal absent a showing of an abuse of discretion. *City of Cape Girardeau v. Robertson*, 615 S.W.2d 526, 531 (Mo.App.1981). While a reading of the cases in which we have discussed the "special facts and circumstances" exception makes it evident that various judges have different views on this cause of action, the cases uniformly hold that if there is such a duty, it arises only upon a showing of recent, prior violent crime on the defendant's premises. The court properly ruled that evidence of property and other non-violent crimes was irrelevant and, therefore, inadmissible.

■ Evidence of purse snatchings falls into a different category. Some purse snatchings involve sufficient force to constitute robbery in the second degree; in others, there is no violence. Here, the trial court carefully reviewed the police reports of all purse snatchings and admitted those which it believed involved violence. Recognizing the broad discretion of the trial court on matters of relevance, we find no abuse here. Moreover, in light of the evidence of numerous violent crimes admitted, any error which might have occurred in excluding evidence of any of the 14 purse snatchings in question would have been harmless.

Plaintiff points to the case of *Virginia D. v. Madesco Investment Corp.*, 648 S.W.2d 881 (Mo. banc 1983), as support for the admissibility of evidence of non-violent crimes. There, the supreme court found a duty where there was evidence of past *incidents* which should have alerted hotel management to the possibility of crime on the premises. *Id.* at 888. The court in *Virginia D.* stated, "Nor can it be said that the duty of anticipation extends only to crimes similar in nature and seriousness to those that have occurred in the past." *Id.* We believe, however, the supreme court's comments on the evidence required to establish a duty refer to the "special relationship" exception that it had before it.[3] At the time of trial in this case, the court had before it not only our previous *Brown* opinion but also our other pronouncements on the issue. *See supra* note 1. The trial court's rulings are consistent with our opinions and not inconsistent with *Virginia D.*

---

2. During the trial, plaintiff made offers of proof concerning the excluded evidence. The offers were denied.

3. We recognize that the Pennsylvania case of *Murphy v. Penn Fruit Co.*, 274 Pa.Super. 427, 418 A.2d 480 (1980), cited in *Virginia D.*, supports plaintiff's position. A reading of *Vorbeck*, 704 S.W.2d 296, however, reveals that we reject the position stated in *Murphy*, 418 A.2d at 483–84.

■ Plaintiff also alleges error in the trial court's refusal to admit the computer printout into evidence. Most of the crimes listed on the printout were non-violent and, therefore, irrelevant. Evidence of those that were violent was admitted in the form of police reports; thus the printout would have been cumulative as to those crimes. There was no error in excluding the printout.

■ Plaintiff also contends the trial court erred in excluding evidence that a bank parking lot, directly across a side street from National's parking lot, had been crime-free for the two-year period immediately prior to the assault. There was testimony that a security guard had constantly patrolled the bank parking lot during the two-year period. During the trial, plaintiff made an offer of proof in chambers that St. Louis city police detective Brogan would testify that during the two-year period prior to the assault on plaintiff, there was never a report of a crime, violent or otherwise, on the lot. National objected that the evidence was irrelevant and that there was a lack of foundation because plaintiff had failed to show "any substantial similarity of conditions." The court sustained National's objection and denied the offer of proof.

Plaintiff contends this evidence "was material and relevant to show that if National had taken similar precautions the attack on [plaintiff] might not have occurred." Plaintiff submits the evidence "was highly relevant and probative on the issue of causation ... [because] the bank's experience tends to prove the relative deterrent effect of the presence of a uniformed security guard on a parking lot in the same neighborhood...."

In *Broadview Leasing Co. v. Cape Central Airways, Inc.,* 539 S.W.2d 553 (Mo. App.1976), this court stated, "[W]hat others do is relevant and admissible if the circumstances and conditions are 'substantially,' although not 'precisely,' similar. The similarity that is required is a similarity in essential, not precise, circumstances." *Id.* at 563. Plaintiff argues the essential similarities here are those of two parking lots, separated only by a small side street, both serving "businesses in the same neighborhood where the customers would be expected to be carrying money with them." We have examined the evidence on this issue and cannot say the trial court abused its discretion.

■ Plaintiff alleges the trial court erred in submitting to the jury National's converse instruction because it "did not utilize substantially the same language of [plaintiff's] verdict director in that [plaintiff's] verdict director submitted 'ordinary care,' whereas National's converse submitted 'negligence' ...."

Plaintiff submitted and the trial court gave the following verdict directing instruction to the jury:

### Instruction No. 9

Your verdict must be for plaintiff and against defendant, National Super Markets, Inc. if you believe:

First, there was a danger that customers would be attacked on National Super Market's parking lot, and as a result the parking lot was not reasonably safe, and

Second, defendant, National Super Markets, Inc., knew, or, by using ordinary care, could have known, of this condition, and

Third, defendant, National Super Markets, Inc., failed to use ordinary care to make the parking lot reasonably safe, and

Fourth, such failure either directly caused damage to plaintiff or combined with the acts of defendants, Sentry Security Agency and T.G. Watkins, to directly cause damage to plaintiff.

National submitted and the trial court gave the following converse instruction to plaintiff's verdict director against National:

### Instruction No. 10

Your verdict must be for defendant National Super Markets, Inc. unless you believe defendant National Super Markets, Inc. was negligent as submitted in instruction number 9 and as a direct re-

sult of such negligence plaintiff sustained damage.

The trial court gave the following definitional instructions to the jury:

### Instruction No. 5

The term "negligent" or "negligence" as used in these instructions means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

### Instruction No. 6

The phrase "ordinary care" as used in these instructions means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

In *Demko v. H & H Investment Co.*, 527 S.W.2d 382 (Mo.App.1975), plaintiff gave verdict directing instructions for each defendant which required a finding that "defendant failed to use ordinary care." The various defendants gave separate converse instructions which required a verdict for that defendant unless the jury found the defendant "negligent." Plaintiff's verdict director defined "ordinary care" as that "degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." Defendants' converse instructions defined "negligence" as "the failure to use 'ordinary care' which means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." *Id.* at 385.

In *Demko*, this court stated:

MAI 33.01 requires a converse instruction to contain substantially the same language as the verdict directing instruction in order to prevent a jury from returning a verdict based on its interpretation of a term of law which neither appears in the verdict director nor is defined. *Brewer v. Swift & Company*, 451 S.W.2d 131, 133 (Mo. banc 1970). That danger is not present in this case. Whatever the semantic differences in the instructions given the jury, all instructions in question here included definitions of

"ordinary care" and "negligence" which used identical language. Thus we cannot say, as the court said in *Brewer*, that the jury was given a roving commission to substitute its own notion of the proper interpretation of a term of law.

527 S.W.2d at 385.

The court concluded that:

In these circumstances it is difficult to conceive how the jury was confused or misled.... Therefore, while the failure of defendants ... to use substantially the same language in their converse instructions as used in plaintiff's verdict directors did not comport with previous decisions, we find that the instructions, when read together, that is, plaintiff's verdict directors and definitions given in defendants' converse instructions are clear and complete and we cannot find any reversible error.

*Demko*, 527 S.W.2d at 386.

The instructions before us are similar to those in *Demko*. Plaintiff's verdict director used "ordinary care" and the converse used "negligent" and "negligence." Separate instructions gave identical definitions to "negligent," "negligence," and "ordinary care" as those words were used in instructions. We do not believe the jury could have been confused or misled by the instructions.

■ Plaintiff also alleges the trial court erred in permitting National to argue an adverse inference from Sentry's failure to call as witnesses five of the guards who were on duty the week of the assault. Plaintiff contends that, while she and Sentry were opposing parties in the lawsuit, they were aligned on the issue of patrolling the lot.

During his closing argument, in the context of his discussion of the potential apportionment of fault between National and Sentry, National's attorney stated:

There were other ones—other employees of Sentry employed as security guards working there that week. ... Now, here were employees of Sentry that were also there working at the time she was injured. Now, if they weren't told to be

out on the lot why weren't these individuals brought in here to tell us what the story was? Now, you can infer, and I'll be corrected if I'm wrong again, but you may infer from the fact that Sentry did not bring these individuals in you may infer that their testimony would have been adverse. You may infer that these people if brought in would have said, "Yes, Mr. Long did tell us to be out there in the lot. Yes, we were instructed to periodically patrol the lot. Yes, we did periodically patrol the lot."

Plaintiff did not object to this portion of the closing argument, and thus this allegation of error has not been preserved for appellate review. We find no manifest injustice or miscarriage of justice that would entitle plaintiff to relief under the plain error standard of Rule 84.13.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.