**Lorri AARON, Appellant,**

v.

**David HAVENS, Respondent.**

No. 70366.

Supreme Court of Missouri,
En Banc.

Oct. 18, 1988.

Thomas W. McCarthy, James C. Owen, Chesterfield, for appellant.

Paul C. Hetterman, M. Jane Matoesian, St. Louis, for respondent.

BLACKMAR, Judge.

The trial court sustained the defendant landlord's motion to dismiss the plaintiff tenant's suit for damages for personal injuries alleged to have resulted from a sexual assault by an intruder who had gained entry to her apartment through a window adjoining a fire escape. The plaintiff appealed to the Missouri Court of Appeals, Eastern District, which transferred the case to us because two cases involving somewhat similar issues were pending here. These have now been decided. See *Madden v. C & K Barbecue Carryout, Inc., and Decker v. Gramex Corp.*, 758 S.W.2d 59 (Mo. banc 1988). The factual and legal situations are not congruent because those cases turned on "special facts" while this one involves a landlord-tenant relationship. We nevertheless conclude here, as we did in those cases, that the trial court erroneously sustained the motions to dismiss. We now reverse and remand for trial.

The decision below is based on the pleadings, and so we construe the plaintiff's petition favorably to her, taking her well pleaded allegations of fact as true and giving her the benefit of all reasonable inferences from the pleaded facts. *Stiffelman v. Abrams*, 655 S.W.2d 522, 525 (Mo. banc 1983).

The plaintiff rented an apartment on the third floor of a building owned by the defendant at 5560 Cates in St. Louis, taking possession in March of 1984. At that time the inside latch on the rear, southside window of the apartment was broken so that an intruder could enter her apartment from the fire escape. A burglar had actually obtained access to her apartment through the front balcony doors, also accessible to

the fire escape, and this was known to the landlord. The plaintiff reported the broken window latch repeatedly to the landlord and told him that she feared for her safety. She asserted a particular danger to herself in that the landlord had designated her to collect rents from the other tenants, and stated that the neighborhood was a dangerous one where violent crimes had occurred in the past and could be expected to occur in the future. These circumstances, although perhaps appropriate for a jury to consider, are not determinative at the pleading stage.

In September of 1984 an intruder entered the plaintiff's apartment through the unsecured window, raping and sodomizing her. She charges that the defendant was negligent in three respects, in that he:

a. Failed to install a lock to the rear window of Plaintiff's apartment after repeated requests to do so;

b. Failed to secure a lock to the door along a six foot fence surrounding the back yard of the apartment building this allowing anyone entry to the back yard of 5560 Cates; and

c. Failed to take precautions so that an intruder could not easily gain access to the fire escape and, therefore, the windows to the apartments at 5560 Cates.

A petition in a negligence case must state facts demonstrating a duty owing from the defendant to the plaintiff, a breach of duty, and damages as a result. See *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881, 886 (Mo. banc 1983) citing *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. 1976); Restatement (Second) of Torts § 281 (1965); MAI 22.05 (1981). Trial courts should hesitate to dismiss cases at the pleading stage unless it is clear that no claim for liability is presented.

The landlord argues that he had no duty to tenants to make the premises safe against the criminal conduct of intruders, citing *Faheen v. City Parking Corp.*, 734 S.W.2d 270 (Mo.App.1987) and *Meadows v. Friedman Railroad Salvage Warehouse*, 655 S.W.2d 718 (Mo.App.1983), and that the petition therefore fails to state a claim. We do not agree. The existence of a duty is purely a question of law. The owner of an apartment building has a recognized duty to use due care to make common premises safe, as against foreseeable risks.[1] The petition amply alleged that the landlord knew or should have known of a dangerous condition of the fire escape, by reason of which a criminal intruder could obtain easy access to the plaintiff's apartment. If a private apartment can be entered through a window, injury to the occupants is foreseeable. This opportunity for access through an unusual route, indeed, might be considered an invitation to those disposed toward surreptitious entry. There is no logical reason why a dangerous condition of common premises, proximately causing injury on private premises, could not be the occasion for liability.

The trial judge relied on such cases as *Brown v. National Supermarkets*, 731 S.W.2d 291 (Mo.App.1987), and *Warren v. Lombardo's Enterprises, Inc.*, 706 S.W.2d 286 (Mo.App.1986), in dismissing the petition. The respondent points to these cases in arguing that there is no duty to protect against violent crime unless there is a past history of crimes of violence on the premises. The cases are not comparable, because they dealt with premises to which the public was invited, and fall under the general heading of liability to invitees. Here the danger is from unauthorized entry from common premises into private premises. The abstract proposition that there is no duty to protect against criminal misconduct is substantially attenuated in several recent cases.[2] It is not necessary to allege that past crimes involving entry into unauthorized places are of the same general nature

1. *Jackson v. Ray Kruse Const. Co.*, 708 S.W.2d 664 (Mo. banc 1986); *Green v. Kahn*, 391 S.W. 2d 269 (Mo.1965); *Barker v. East Side Building Corp.*, 344 S.W.2d 299 (Mo.App.1960); *Hieken v. Eichhorn*, 159 S.W.2d 715 (Mo.App.1942). Cf. *Lay v. Dworman*, 732 P.2d 455 (Okla.1986).

2. *Madden v. C & K Barbecue Carryout, Inc., and Decker, v. Gramex Corp.*, 758 S.W.2d 59 (Mo. banc 1988); *Virginia D.*, 648 S.W.2d 881 (Mo. banc 1983).

as the one which gave rise to the claim. *Virginia D.*, 648 S.W.2d at 887. If a burglar may enter, so may a rapist. To find a duty only the incidence of harm, not necessarily the quantum, need be foreseeable. Restatement (Second) of Torts § 281, comment j (1965); Prosser and Keeton, *Torts* § 43 at 290–292 (5th ed. 1984).

*Faheen v. City Parking Corp.*, 734 S.W.2d 270 (Mo.App.1987), strongly relied on by the landlord, was brought to recover for the wrongful death of a tenant of an apartment complex adjoining the defendant's parking garage, but the alleged facts were not at all like the present ones. The case involved an unforeseeable assassination in an area not inappropriately open to members of the public.

If the petition is otherwise adequate and any one of the three specifications of negligence is sufficiently pleaded it is not subject to dismissal on motion. *Madden*, 758 S.W.2d at 61 citing *White v. Mulvania*, 575 S.W.2d 184, 188 (Mo. banc 1978). We need only look at the allegation that the defendant failed to take available precautions to deny an intruder easy access to the fire escape. This allegation is cryptic, and in an earlier era might have been considered insufficiently factual, but we conclude that it is sufficient to survive a motion to dismiss. It could be supported by proof that means were available to make the fire escape more difficult of access from the bottom, without unduly interfering with its essential purpose of providing an escape route. *Cf. Jackson v. Ray Kruse Const. Co.*, 708 S.W.2d 664 (Mo. banc 1986). The fire escape is part of the common premises under the landlord's control. No tenant had the right to make repairs or modifications, and this gives rise to the landlord's duty to use due care to protect against dangerous conditions. Section 320.010, RSMo 1986, cited by Judge Robertson, does not insulate the owner from liability for maintaining a fire escape which reaches the ground, if the jury is persuaded that a design which will give the tenants better protection is reasonably available and should be used in the exercise of ordinary care.

Inasmuch as the petition is not legally insufficient we need not discuss the remaining two allegations of negligence in depth. The charges about the window lock provoke the inquiry as to whether the landlord has a duty to the tenant to repair the lock and whether the tenant could make the repairs herself. There is no allegation of contractual assumption of responsibility, or of any undertaking to repair after notice of the defect. *Cf. Advance Rental Centers, Inc. v. Brown*, 729 S.W.2d 644 (Mo. App.1987). Plaintiff's counsel at oral argument suggested that the charges regarding the fire escape are more significant than those concerning the window. Nor are we prepared to endorse an abstract proposition that a landlord is obliged to provide gates or fences to keep intruders out of the yard surrounding an apartment building.[3] On remand the plaintiff should have the opportunity to amend her petition to state such additional facts as may be available to her to fortify her allegations.

The defendant suggests that the imposition of a duty in the situation described in the petition will have severe economic consequences for landlords, and that the costs will have to be passed on to tenants. Our holding here, however, follows from established principles of Missouri tort law. We appreciate the diligent efforts of counsel in citing cases from other jurisdictions, but do not deem detailed discussion necessary because of the abundance of our own cases. The trial judge will have the responsibility of analyzing the evidence produced to determine whether it supports the pleaded factual allegations. The jury will then be able to consider whether the defendant has breached his duty to use "ordinary care" to make the premises "reasonably safe." See MAI 22.05. It may consider economic

---

**3.** The oft-cited case of *Kline v. 1500 Massachusetts Ave. Apartment Corp.*, 439 F.2d 477 (D.C. Cir.1970), is not fully on point because there it appeared that the landlord had assumed a duty by providing security measures which had fallen into disrepair and disuse. *Id.* at 478–79, 485. Contrary to Judge Robertson's suggestion, we deal only with the fire escape and not with an "entry hall" or the "area surrounding."

factors in making these determinations. We have no way of knowing whether the jury will conclude that there are practical and economic means of protection. We say only that the petition justifies a trial.

The petition, liberally construed, alleges each of the essential elements of a negligence action. The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

BILLINGS, C.J., and RENDLEN and HIGGINS, JJ., concur.

WELLIVER, J., concurs in separate opinion filed.

DONNELLY, J., dissents in separate opinion filed.

ROBERTSON, J., dissents in separate opinion filed.

WELLIVER, Judge, concurring.

Were I free to do so, I would dissent in this case for all of the reasons set forth in my dissents in *Virginia D. v. Madesco Inv. Corp.* 648 S.W.2d 881, (Mo. banc 1983), *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59 (Mo. banc 1988), and *Decker v. Gramex Corp.*, 758 S.W.2d 59 (Mo. banc 1988). However, the binding precedent of the majority holdings of those cases compels me to concur.

DONNELLY, Judge, dissenting.

In my view, the jury system is without equal as an instrument of fairness. But juries should be allowed to function within a process designed for fairness. Adoption and application of a concept of *pure* comparative fault would expand the role of juries in the civil justice system and would make the matter of *legal* causation less important and less inscrutable. *See* Smith, *Legal Cause in Actions of Tort*, 25 Harv.L.Rev. 103 (1911).

The principal opinion holds that a landlord may be held liable to a tenant for criminal acts of a third person.

I would concur if I could persuade my brothers to permit the jury to allocate fault between the landlord, the tenant, *and* the criminal actor and to hold each of the three

responsible "only in proportion to his fault". *Steinman v. Strobel,* 589 S.W.2d 293, 296 (Mo. banc 1979) (Donnelly, J., dissenting). But I cannot. I respectfully dissent.

ROBERTSON, Judge, dissenting.

The Court's opinion benignly repeats the long-accepted principle that "[t]he owner of an apartment building has a recognized duty to use due care to make common premises safe, as against foreseeable risks." (At 447). From this innocent beginning, the Court takes us down a legal road our courts have not traveled before. Because I believe the Court errs in so doing, I respectfully dissent.

Three rationales exist which might support the imposition of the duty of landlords. First, the landlord owes a duty to maintain common areas in a reasonably safe condition. Second, courts may imply "an obligation on the landlord to provide those protective measures which are within his reasonable capacity" in the lease. *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 439 F.2d 477, 485 (D.C.Cir.1970). Third, one could argue that a special relationship exists between landlord and tenant comparable to that which exists between an innkeeper and his guest which justifies the imposition of the duty on the landlord to protect tenants from foreseeable criminal acts. In my view, none of these rationales justify the decision of this Court in the case at bar.

The Court's reasoning in this case appears consistent with the first rationale. In Missouri, a landlord has a duty to correct known dangerous conditions in common areas. *See Jackson v. Ray Kruse Construction Co., Inc.*, 708 S.W.2d 664 (Mo. banc 1986) (landlord has duty to control speed on parking lots when there is a problem with speeding vehicles); *Fitzpatrick v. Ford*, 372 S.W.2d 844 (Mo.1963) (landlord was liable when child was injured by collapse of roof of porch); *Peterson v. Brune*, 273 S.W.2d 278 (Mo.1954) (porch railing was responsibility of landlord where all tenants of necessity must use area in common); *Woods v. Gould*, 515 S.W.2d 592

**450**

(Mo.App.1968) (railing on porch used by several tenants should have been made safe for small children by landlord); *Barker v. East Side Building Corporation,* 344 S.W.2d 299 (Mo.App.1960) (merry-go-round used by children posed a danger such that landlord was responsible); and *Hieken v. Eichhorn,* 159 S.W.2d 715 (Mo.App.1942) (landlord was liable for injuries to child struck by truck in area set aside as playground for children of tenants).

Even if one assumes, however, that the fire escape is a common area, it does not follow that the traditional duty to maintain common areas provides a convincing basis for the Court's decision. The dangerous condition pled by appellant in this case, relied on by the Court, and of which the Court finds "the landlord knew or should have known", is "the dangerous condition of the fire escape." (At 447). Yet no party argues that the fire escape is dangerous itself; no averment is made that it is missing steps, or unduly slippery, or dangerous in its own right in any way. Nor is there any averment that the crime in question took place in the common area, as was the case in *Kline.* The "dangerous condition" of the fire escape is no more than it permits access to an entrance to this apartment.[1]

This conclusion is one which our courts have not heretofore reached. And this is the new path down which the Court sends us today: a landlord faces potential liability to his tenants whenever an apartment building's common areas—be they fire escapes, entry hallways, or the area surrounding the building—which are not dangerous in themselves provide access to points of entry to the tenant's leasehold for one whose mission is crime.

Implication of "an obligation on the landlord to provide those protective measures which are within his reasonable capacity", *Kline,* 439 F.2d at 485, in the lease contract, provides no support for the Court's conclusions either. In *Kline,* a tenant in defendant's apartment building, was robbed and assaulted in a common area of the building. The building entrances had been left unlocked, although when Kline first moved into the building more than six years prior to the crime, security had been stringent.

"Reasonable capacity", though not a very precise term, seems to me to be a function of contractual obligation and legal expectation for these purposes. As to the latter, the legal expectation is that a landlord maintains common areas. It is, therefore, within the reasonable capacity of the landlord to take protective means within common areas to prevent foreseeable incidents of crime.

Our cases properly recognize a corollary to the landlord's duty to correct dangerous conditions in common areas: the tenant bears responsibility for conditions in those parts of the leasehold under the tenant's control. *See Gray v. Pearline,* 328 Mo. 1192, 43 S.W.2d 802 (1932) (porch railing causing injury was entirely on tenant's premises); *Janis v. Jost,* 412 S.W.2d 498 (Mo.1967) (no duty on part of landlord to repair or maintain flue in apartment); *Pate v. Reeves,* 719 S.W.2d 956 (Mo.App.1986) (porch and rail not part of common area when accessible only through tenant's apartment); *Thomas v. Barnes,* 634 S.W.2d 554 (Mo.App.1982) (landlord has no duty to maintain fluorescent light fixture in rented premises); *Erhardt v. Lowe,* 596 S.W.2d 489 (Mo.App.1980) (landlord did not retain control over steps of single family dwelling). These cases accept the sound proposition that the party in the best position to

---

**1.** Section 320.010, RSMo 1986, requires owners of apartment buildings of three or more stories to provide a fire escape. The statute permits the owner to choose between a fire escape which reaches to the ground or one which is counterbalanced to permit access to the ground for those coming down the fire escape. It is a misdemeanor, punishable by up to three months in jail and a fine of up to $200, to fail to provide a fire escape where required by the statute.

Section 310.050, RSMo 1986. Moreover, "[t]he failure of a [civil] defendant to comply with the provisions of Section 320.010 ... requiring the building in question to be equipped with a fire escape [is] negligence per se." *Gaines v. Property Servicing Co.,* 276 S.W.2d 169, 173 (Mo.1955). One wonders whether the Court amends the statute today by requiring not simply the fire escape mandated by the law, but a particular type of fire escape which is burglar proof.

prevent the harm, bears the duty under negligence concepts.

It is not within the landlord's reasonable capacity to make repairs within the privacy of the leasehold absent a contractual obligation to do so. Appellant, however, offers no averment in her petition that the landlord bears any responsibility for repairs to the leasehold under the terms of the lease or otherwise. Absent averments of an affirmative contractual obligation in the landlord to effect repairs, implying a "reasonable capacity" in the lease offers no support for appellant's position.

In the third instance, I perceive no basis for finding that the landlord-tenant relationship is a special one justifying the imposition of a duty on a landlord similar to that borne by an innkeeper. Special relationships have long been recognized, e.g., between an innkeeper and his guest,[2] a common carrier and his passenger,[3] and a business and its invitee.[4] The heightened duty in each of these relationships is warranted because of the greater ability of one party to apprehend danger and to take steps to alleviate it. In most instances, the party bearing the duty has superior knowledge of the property based on a consistent experience with it unavailable to a guest, the passenger, or the invitee.

No such superior knowledge or ability to take steps to guard against danger exists in a landlord, vis-a-vis a tenant, in the landlord-tenant relationship. The tenant is in constant "communication" with the apartment. The tenant's experience with the leasehold is at least as consistent as that of the landlord. For this reason, no special relationship exists which would justify imposing landlord liability.

I turn finally to the issue of foreseeability. In *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59 (Mo. banc 1988) this Court found a duty of care in the proprietor of a business to protect invitees from the foreseeable criminal acts of third parties. The Court wrote that "[a] duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Id.* at 62. The Court's decision in *Madden*—at least to the extent that it recognizes that a duty may exist in the proprietor under some circumstances—is supportable on the basis of the proprietor's potential superior knowledge of dangers which an invitee might encounter and his superior ability to take precautions to avoid it. In my view, the business-invitee relationship is a special one which justifies the imposition of the duty under appropriate circumstances.

In this case, the landlord neither possesses superior knowledge of the danger nor a superior ability to avert it. The danger, which here became much more than danger, was clearly foreseeable to the tenant. She was also in the most efficient position to take steps to avoid the risk by securing her window, in the absence of the landlord's affirmative contractual or legal duty to do so. The tenant bore the duty to protect herself from the foreseeable risk which existed. I do not believe she can now claim that the landlord bears that duty which she chose not to fulfill herself.

I can find no rationale which supports the imposition of liability on the landlord on the pleadings in this case. The trial court did not err in dismissing the plaintiff/appellant's petition. I respectfully dissent.

---

**2.** *Virginia D. v. Madesco Investment Corp.,* 648 S.W.2d 881, 885 (Mo. banc 1983).

**3.** *Jessie v. Bi–State Development Agency,* 710 S.W.2d 366 (Mo.App.1986).

**4.** *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59 (Mo. banc 1988).