Orville UNDERWOOD, Plaintiff-Appellant,

v.

James MOLONEY, Administrator of the Estate of Amy Burns, Defendant-Respondent.

No. 31659.

St. Louis Court of Appeals.

Missouri.

Oct. 19, 1965.

Rehearing Denied Nov. 17, 1965.

Application to Transfer Denied Jan. 10, 1966.

Edward F. Downey, John J. Delabar, Lawrence E. Ehrhart, St. Louis, for plaintiff-appellant.

James & Morris, Harry M. James, St. Louis, for defendant-respondent.

ANDERSON, Judge.

This action was originally brought against Harry Burns and his wife Amy Burns. It was a suit for damages for personal injuries sustained by plaintiff, a tenant of said defendants, alleged to be due to the negligence of the latter, who were the owners of the property holding title as tenants by the entirety. Defendant, Harry Burns, died on or about November 11, 1961, and on September 27, 1962, Amy J. Burns, Executrix of the Estate of Harry Burns was substituted as a party defendant for Harry Burns, deceased. Thereafter, the action as against Amy J. Burns, Executrix of the Estate of Harry Burns was by the Court dismissed on motion of said Executrix. The cause thereafter proceeded against Amy J. Burns and the trial thereof resulted in a verdict and judgment for plaintiff in the sum of six thousand five hundred dollars. Defendant thereafter filed her motion for judgment in accordance with her motion for a directed verdict, or, in the alternative, for a new trial. The motion for judgment was by the Court sustained. It was further ruled that if said judgment be reversed by an appellate Court, the motion for new trial was sustained for error in giving Instruction 3. From this ruling of the Court, Plaintiff has appealed. After the appeal and before submission of the cause in this court, defendant Amy Burns died, and by agreement of the parties her administrator, James C. Moloney, was substituted as Respondent herein.

The facts in this case which we deem necessary to a decision of the points raised on this appeal come from the evidence introduced by plaintiff. Defendant introduced no evidence, but stood on her motion for a directed verdict offered at the close of plaintiff's case.

The premises in question was a two-family flat having four rooms downstairs and five rooms upstairs. It was known and numbered as 5812 Theodosia Street in the City of St. Louis. It was on the south side of said street. There was a front porch across a portion of the north end of the building with steps leading from the sidewalk to said porch. From the porch there were two separate doors, or entrances to said building, one leading into the downstairs flat and the other for use of the upstairs portion of the flat. Mr. and Mrs. Burns resided in the downstairs portion, and plaintiff, a tenant lived upstairs. Mr. and Mrs. Burns owned the building as tenants by the entirety. They purchased the property in 1946, and moved into the property in October of that year. Mr. and Mrs. Burns regarded it as partnership property. Whatever Mr. Burns did with reference to repairs met with Mrs. Burns approval. Rent collected was placed in a joint bank account, and taxes were paid out of this account.

Immediately inside the front door to the upstairs portion of the flat was a trap door about 4 feet long and three feet wide. This trap door was level with the floor and formed a part of it. A stairway leading to the second floor ascended southwardly from the south end of the trap door. Beneath the trap door was a stairway for the use of the upstairs tenants which descended southwardly to the basement. This stairway consisted of nine wooden steps. There was what was referred to in the evidence as a step board which ran north and south along the west wall of the building. This step board was about four feet long and six inches wide, and was located about six inches below the trap door. There was about 35 inches of head room

from the trap door frame to the basement steps.

The step board at its south end rested upon an upright 4 by 4 inch board which was nailed to the basement wall about 18 inches below the trap door, with about four or five twelve penny nails. There was testimony that these nails were not long enough to hold the 4 by 4 fast to the wall, but for such purpose forty penny nails should have been used. At its north end, the step board was nailed to the upstairs stairway. The evidence does not disclose whether or not the step board was nailed to the top of the 4 by 4. The step board was used by anyone going from the stairway which led upstairs to the basement stairway, and vice versa. Because of having so small headroom space, one wishing to descend the basement stairway would be required to almost get on his hands and knees to get through the trap door. There were two lights for the illumination of the basement stairway, one hanging directly over the trap door and the other in the basement near the furnace provided for the upstairs portion of the flat. There was testimony that these lights did not illuminate the underside of the step board and its support. In order to observe how the basement stairway and step board were constructed it would be necessary to carry a light on an extension cord onto the basement stairway.

The steps leading from the trap door to the basement were there when Mr. and Mrs. Burns bought the property in October, 1946. In December, 1957, plaintiff rented the upstairs portion of the flat, and moved in sometime later. Mr. Burns handled the matter of renting with plaintiff and his wife. There was no written agreement to lease. The conversation between Mr. Burns and the Underwoods with reference to the renting was limited to a statement that the rental would be $50.00 per month, which the latter agreed to pay. Nothing was said between the parties about repairs to the premises.

Before plaintiff and his family moved into the premises and took possession under the rental agreement, Mr. Burns did some wall papering and repaired the plastering in the living room. Mr. Burns told plaintiff if there was any thing he needed done to tell him and he would have it fixed. This conversation was after plaintiff had agreed to rent the premises, and before he and his wife moved in and took possession under the agreement to rent the premises.

Mr. and Mrs. Burns retained a key to the upstairs apartment. The reason they did this was explained by Mrs. Burns, who was called as a witness by plaintiff: "Well in case of an emergency we would have the key to go and see about a fire or anything like that, we would have the key to see about it."

On one occasion, about a year after plaintiff moved into the premises, Mr. Burns noticed water coming down into his bathroom. His bathroom was directly underneath that of plaintiff. A drain under the floor of plaintiff's bathroom had developed a leak, and Mr. Burns called a contractor to put in a new drain, thus protecting his bathroom from the dripping water. Plaintiff testified he did not let the contractor into the apartment. Mrs. Burns testified that she thought they (she and her husband) let him in, but was not sure. This testimony with reference to the emergency created by the leak in the upstairs plumbing is the only evidence from which it could be inferred that Mr. Burns ever used the key to the front door of the premises in an emergency situation. On another occasion, after plaintiff's accident, and while he was in the hospital Mr. and Mrs. Burns let themselves into the apartment by the use of the key, but the record does not show for what purpose.

After plaintiff's family moved in, Mr. Burns repaired a downspout on the outside of the building, and put a new bolt on the trap door.

On February 15, 1959, plaintiff was in the basement working on his furnace. While doing this he decided to go upstairs to hurry up his children who were getting ready for church. He ascended the basement steps and when he reached the top of the steps put his right foot on the step board, and tried to put his left foot on the first upstairs step when the step board pulled loose and away from the wall and went from under him, with the result that he fell a distance of four feet and landed on the basement steps. As a result of this fall he received the injuries for which he sought damages in this action.

Mrs. Burns testified that she had been on the stairway a few times during the thirteen years she and her husband lived in the flat, and at those times the step board seemed like it was securely fastened to the wall. She also stated she did not notice anything insecure about the four by four. She did not warn the Underwoods of any danger in the use of the steps. Plaintiff's wife testified that prior to plaintiff's fall she had examined the basement steps and never noticed anything wrong with them. There is no testimony in the record by any of the witnesses that it was apparent on inspection that either the step board or four by four was insecurely fastened or maintained. Mr. Burns testified he was not familiar with the manner in which the step board was fastened, nor did he have any occasion before plaintiff fell, to inspect it. He further stated that none of his tenants had ever made any complaint about it, and he "had no excuse to do anything with it." No repairs were made to the stairway in question before plaintiff fell.

After plaintiff's accident, Mr. Burns repaired and secured the step board. He put a two by four board at the south end and under the step board, and nailed the step board to it. He also nailed the four by four to the basement steps, and fastened the step board to the flooring of the first floor. Since there is no issue on this appeal concerning the extent of plaintiff's injuries, the facts with reference thereto will not be detailed.

Appellant contends that the trial court erred in setting aside the jury's verdict and entering judgment for the defendant. In support of this assignment, it is urged that plaintiff made a submissible case on the theory that defendant retained control of the premises including the basement stairway for the purpose of making repairs. It is urged that this result follows from the proof that the landlord agreed to and did in fact, make repairs; that he retained a key which permitted entrance for that purpose; and that the landlord did in fact make repairs to the step board after plaintiff's accident.

Appellant in support of his contention cites and relies on Tucker v. Taksel, Mo. App., 345 S.W.2d 385, a decision of this Court. In that case, plaintiff was injured by falling through an open, unscreened window of his family's second story apartment. He was playing handball when the ball bounced against the window. He grabbed for the ball with his right hand, and tried to brace himself with his left hand against the window sill. The sill broke loose and fell outward to the ground, as did plaintiff. The sill and the outer framework to which it had been attached, after the accident contained parts that were "rotten, black and spongy looking." Before the accident, the Tuckers noticed the window was settled at one end leaving a gap of one half inch between the sill and bottom of the screen. The apartment was furnished when the Tuckers moved in. The expense of all the utilities were included in the rent. Mrs. Bonney, defendant's resident manager, rented the apartment to the Tuckers. She retained a key to the apartment and all other apartments in the building which she occasionally used for entering the apartments for the purpose of decorating, replacing fuses, and turning off plumbing. We found from the evidence that at the time of the renting and as part of the rental agreement, she, on behalf of defendant, contracted to repair the premises. Defendant did make all repairs inside and outside the building, including repair of furniture, plaster, plumbing, porches, and windows. Mrs. Bonney testified, "that went for the window sills or anything else." Defendant had previously replaced a defective window sill in another apartment in the building. After plaintiff's injury, the defendant replaced the window sill in question. On the foregoing facts, this Court held that the evidence was sufficent to give rise to an inference that defendant reserved partial control of the premises for the purpose of making repairs. The Court based its ruling on the fact there was an agreement to repair, retention of a duplicate key for that purpose, and the making of repairs, before and after the accident pursuant to that agreement.

The Tucker case does not rule the case at bar. The important consideration in that case was the contract to repair which was a part of the rental agreement. While no tort action can be based upon the breach of the contract, Grimmeissen v. Walgreen Drug Stores, Mo.App., 229 S.W.2d 593, 598; the retention of control which is evidenced by the terms of the letting, does create a duty on the landlord to repair, the violation of which is a tort. The rule announced in the Tucker case should have no application where there is no binding contractual obligation to repair, but merely a gratuitous promise to repair without consideration made after the agreement to rent has been consummated, or to a situation where repairs are gratuitously made after the tenant has taken possession of the rented premises. Under such circumstances, it cannot be said that the landlord has retained partial control for the purpose of making repairs.

In the case at bar, there was no promise to repair which was a part of the rental agreement. Nor was there a retention of a key to the premises for that purpose, but merely for the purpose of use in emergencies, as testified by Mrs. Burns, who was plaintiff's witness. The repairs made both before and after plaintiff's accident were not made in fulfillment of a duty arising from a retention of control, but in our opinion, were gratuitous undertakings on the

part of the landlord. In our judgment, there was insufficient evidence to justify a finding that Mr. and Mrs. Burns retained control of the premises for the purpose of making repairs. Hence, there was no breach of duty on their part upon which to base an action for damages for failure to make repairs.

■ It is next urged that plaintiff made a case for the jury on the theory there was a latent defect which caused plaintiff's injury. Under the law of landlord and tenant where the former conceals or fails to disclose to his tenant any condition which involves an unreasonable risk of injury to the tenant or those lawfully on the premises with the consent of the tenant, the owner is subject to liability to such persons for injury caused by said condition after the tenant has taken possession, if the owner knows or had reason to know of the condition, and the tenant is not aware of same or of the risk involved. Restatement of the Law (second) Torts, section 358, p. 243.

■ In the case at bar, the defect which caused plaintiff's injury was the fact that the four by four was not properly nailed to the basement so that it pulled away from the wall, causing the step board to shift at the time plaintiff stepped upon it. There is no evidence in the record that defendant or her husband knew that the proper length nails were not used in fastening the four by four to the basement wall, nor evidence that such condition could have been discovered upon inspection. In our opinion, plaintiff failed to make a case for the jury upon the theory of latent defect known to Mr. and Mrs. Burns and not known by plaintiff.

In view of what we have hereto ruled, we are compelled to hold that the trial court did not err in sustaining defendant's motion for judgment in accordance with her motion for a directed verdict. Such being the case it is not necessary to pass upon the other points raised by appellant directed to the action of the trial court sustaining in the alternative defendant's motion for new trial.

The judgment of the trial court for defendant is affirmed.

WOLFE, P. J., and WOODSON OLD-HAM, Special Judge, concur.