Joseph M. ERHARDT,
Plaintiff-Appellant,

v.

Ruth Brite LOWE,
Defendant-Respondent.

No. 11140.

Missouri Court of Appeals,
Southern District,
Division Four.

March 12, 1980.

Charles C. Shafer, Jr., Kansas City, for plaintiff-appellant.

David W. Ansley, James B. Condry, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for defendant-respondent.

Before MAUS, P. J., and GREENE and PREWITT, JJ.

PREWITT, Judge.

Plaintiff appeals from an adverse judgment in this personal injury action. Plaintiff broke his hip when he fell on concrete steps at the front of a house owned by defendant. Plaintiff rented the house from 1967 to 1972. He testified that at the time it was rented from defendant, she agreed to keep the premises in repair. She denied any agreement to repair. Plaintiff says that when he rented the premises, the front steps were crumbling. Plaintiff contends that he informed defendant numerous times about the condition of the steps but that she never said she would repair them. She denied any conversation about the steps before the fall. Apparently no repairs were made to the steps while plaintiff lived there. On April 16, 1971, between 5:00 and 6:00 p. m., plaintiff walked down the steps to call one of his sons in to eat. He went down to the third step, and as he turned to start back up, a part of the step broke, causing him to fall. The trial court, sitting without a jury, found that there was no agreement to repair the steps, and that the premises were "totally demised to plaintiff". It denied plaintiff's claim.

Plaintiff presents two points of alleged error: (1) that the trial court was incorrect in finding that defendant had no control over the premises because her retention of a key was sufficient to constitute control over the premises and charge her with liability for the defect in the steps, and (2) that the trial court's finding that there was no agreement to repair was contrary to the undisputed evidence that while plaintiff occupied the premises 13 separate repairs were paid for by defendant.

We first consider point one. Plaintiff contends that defendant's retaining a key prevents the premises from being "totally demised" to plaintiff. Defendant didn't use the key while plaintiff lived there, and said she would not go on the premises without plaintiff's permission. Plaintiff rented the property from 1967 to 1972. Defendant was on the premises 3 or 4 times during that time. Plaintiff took care of the house and lot, paid all utilities, and rented out a portion of the upstairs.

The mere relationship of landlord and tenant does not make the landlord liable for injuries to the tenant on the premises. *Swingler v. Robinson*, 321 S.W.2d 29, 30 (Mo.App.1959); 49 Am.Jur.2d, Landlord and Tenant, § 771. Where the entire interest is demised, the landlord is not liable for injuries to the tenant. *Swingler v. Robinson*, supra, 321 S.W.2d at 32; 52 C.J.S. Landlord and Tenant § 417(3)(a). However, a landlord is under a duty to keep those portions of the premises which he retains in his control in a reasonably safe condition and is liable for damages resulting from his failure to do so. *Lemm v. Gould*, 425 S.W.2d 190, 194 (Mo.1968). To show control in the landlord there must be evidence from which the trier of fact can infer that the tenant surrendered his right to exclusive possession and control. Id. 425 S.W.2d at 195.

We do not believe that just retaining a key establishes as a matter of law that the landlord has possession or control. Keeping a key does not keep the premises from being totally demised. Defendant did not use it and said she wouldn't without plaintiff's permission. There was no indication that she ever intended to use it or would use it, while he was renting the premises. No reason was shown why defendant retained the key. She may have wanted it in case he lost his key or moved out or left without giving her the key. Her reason may have had no relationship to any attempt to control or possess the premises while plaintiff lived there. While retaining a key may be one of the things to be considered in determining control (See *Lemm v. Gould*, supra, 425 S.W.2d at 195; *Janis v. Jost*, 412 S.W.2d 498, 499 (Mo. 1967)), that alone is not sufficient to establish control. In *Janis*, a key was retained, but the court held that the tenant still had full possession and control. The key was not kept for inspection or repair, but only for entry at the termination of the tenancy in case the tenant failed to leave the key. Id. 412 S.W.2d at 503. A key was retained in *Underwood v. Moloney*, 397 S.W.2d 18 (Mo.App.1965), but no retention of control found. Retaining a key did not establish sufficient possession or control to make the defendant liable herein. Point one is denied.

Plaintiff's second point contends that the court erred in finding that there was no agreement to repair because such finding was contrary to the undisputed evidence that 13 repairs, totaling $1,153.81, were paid for by defendant. Plaintiff testified that defendant agreed to repair "everything that had to be done". Defendant denied this. She did admit that she made the 13 repairs when requested by plaintiff. She testified that he never requested that she repair the steps. A landlord might make repairs to the premises under no obligation to do so in order to protect them from further damage, such as the roof repair here made; or to keep the tenant from terminating, where as here, there was a month to month tenancy. This does not establish that there was an agreement to repair or create an obligation to repair. Repairs made, without a binding contractual obligation to repair, after the tenant has taken possession, do not show that the landlord has retained partial control for the purpose of making repairs. *Underwood v. Moloney*, supra, 397 S.W.2d at 22. In *Underwood*, repairs were made before and after the injury. The court there found that the repairs were not made in fulfillment of a duty arising from retention of control, but were gratuitous undertakings. The repairs constituted insufficient evidence to find a retention of control for the purpose of making repairs and thus there was no breach or duty upon which to base an action for damages. Id. 397 S.W.2d at 22–23. Other authorities appear to agree with *Underwood*. 51C C.J.S. Landlord and Tenant, § 366(1), p. 928 states:

> "*Making gratuitous repairs.* The mere fact that the landlord has made repairs does not impose on him any obligation to continue to make repairs, or make him a covenantor to repair. While it has been held that evidence that the landlord has made repairs is admissible in proof of an agreement on his part to repair where the evidence as to the existence of such an

agreement is conflicting, it has also been held, on the other hand, that such evidence alone is not sufficient to prove an agreement. Voluntary repairs by a landlord raise no presumption of a contract to repair, and do not constitute an admission on his part of an obligation so to do."

Voluntarily making repairs upon request does not establish that a landlord contracted to keep the premises in repair nor does it thereafter impose upon a landlord a duty to keep the premises in repair. 49 Am.Jur.2d, Landlord and Tenant, § 775, p. 718. Repairs by a landlord under no obligation to do so do not impose upon him a duty to continue to repair and where he does not continue, he is not liable for injuries caused by the defective condition of the premises. Annot., 150 A.L.R. 1373, "Landlord's liability for injury to person or damage to property as affected by his making of repairs in absence of obligation to do so", p. 1382. That repairs were made does not establish that defendant agreed to keep the premises in repair or had a duty to do so. Point two is denied.

The judgment is affirmed.

All concur.