Melvin L. **WINKLER** and Lisa Winkler, Appellants,

v.

Edward L. **ROBINETT**, Respondent.

No. WD 50293.

Missouri Court of Appeals, Western District.

Nov. 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 1995.

Application to Transfer Denied Feb. 20, 1996.

Elaine I. Jones, Jefferson City, for appellants.

Jeffrey O. Parshall, Susan Ford Robertson, Knight, Ford, Wright, Atwill, Parshall & Baker, Columbia, for respondent.

Before SPINDEN, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Melvin L. and Lisa Winkler brought a negligence action against their former landlord, Edward L. Robinett, claiming that his negligent failure to make repairs resulted in the fire which destroyed their mobile home. After a jury awarded the Winklers $10,000.00 on their claim, the trial court entered a judgment notwithstanding the verdict on behalf of Mr. Robinett, finding that the Winklers had failed to make a submissible case on the issue of causation. The Winklers now appeal, contending that they presented sufficient evidence on the issue of causation to make a submissible case.

The judgment of the trial court is affirmed.

■ Because this court is called upon to determine if the Winklers established a submissible case on a disputed factual issue, the evidence and the reasonable inferences therefrom are viewed in a light most favorable to the Winklers. *Hills v. Ozark Border Elec. Co-op.*, 710 S.W.2d 338, 340 (Mo.App. 1986). Accordingly, the facts set out below disregard Mr. Robinett's evidence, except where it aids the Winklers. *Id.*

Pursuant to a month-to-month lease agreement which began on March 1, 1991, the Winklers were tenants in a mobile home owned by Mr. Robinett. The lease agreement, which was signed by both Lisa Winkler and Mr. Robinett, included the following provisions:

10. It is understood and agreed that owner shall have the right to enter and inspect premises at any reasonable time to insure maintenance and safety of premises, and to show the premises to prospective tenants.

12. Repairs should be brought to the owner's attention and will be handled by owner.

Paragraph No. 5 of the lease agreement, which provided that "[t]enant's [sic] are responsible for any repairs on appliances," was crossed out by Mr. Robinett.

The Winklers began to have electrical problems in the mobile home during their third week of residence. The Winklers experienced blown fuses on a weekly basis, and although they reported the problem to Mr. Robinett on several occasions, he did not come to the mobile home to examine the electrical system. The Winklers would replace the blown fuses with new fuses which were identical in size, but there were continued problems with the Winklers' appliances. The lights in the mobile home would flicker, the televisions and the stereo would fade in and out, and the microwave would not heat, although it had worked properly before the Winklers moved into the mobile home.

Then, in June of 1991, the electrical outlets in the mobile home's living room stopped functioning. In early July, 1991, after the Winklers had asked him four or five times to fix the electrical problem, Mr. Robinett examined the outlets in the living room and the fuse box in the bedroom. He told the Winklers he could not figure out the problem and that he would have to get an electrician.

However, despite numerous further requests by the Winklers, no one ever returned to the mobile home to work on the electrical system. When Lisa Winkler paid only half of the rent in July because of the electrical problems, Mr. Robinett told her that he could not hire an electrician until she paid him the other half of the month's rent. Lisa Winkler paid him the remaining money, but no electrician ever appeared to work on the problem.

On August 2, 1991, the mobile home was destroyed in a fire. The Winklers then filed a two-count petition seeking damages for personal property lost in the fire. Count one of the petition alleged that the fire was caused by a defective electrical system which Mr. Robinett had negligently failed to repair. Count two of the petition alleged a breach of an implied warranty of habitability.

At the trial, the Winklers presented the testimony of an expert witness, William Albus, who was a fire investigator for the Missouri Division of Fire Safety. Mr. Albus, who examined the mobile home shortly after the fire, indicated that the point of origin of the fire was in the area of the master bedroom. He then testified as follows:

Q. Did you examine the fuse box?

A. Yes. I found the fuse box in the debris on the floor, it would be the east wall of the master bedroom.

Q. And what did you observe about the fuse box, if anything?

A. The fuse box was completely destroyed by the fire.

Q. Is that normal?

A. If it's in the origin of fire, yes.

Q. If it's the origin of the fire or in the origin?

A. If it's in the origin of the fire, which in this case this whole area was consumed. It was down in the burning debris.

Q. Okay. Would you tell the jury what you observed about marks on the fuse box?

A. There were a few wires still left in the fuse box that had run into this. There was some arcing and beading on this wire. The fuses itself, the whole panel was completely destroyed. To make any type of determination as to whether a fuse had shorted out or anything, I couldn't make that type of determination due to the amount of damage.

.     .     .     .     .

Q. Now, did you make any determination as to what caused the fire?

A. No. With the magnitude of damage that I have in the area of origin, I could not come to a definite conclusion, 100 percent.

Later in his testimony, Mr. Albus made the following remarks about his investigation:

Q. Did you draw any—what was your final report with respect to this fire?

A. It was what we call an open file at that time. That was the terminology that we used, open file.

Q. And what does that mean?

A. That means you're not able to make a conclusive determination.

Q. On Page 2 of your report, you stated reasons why the file is left open. What are the reasons that you state?

A. One was I was unable to eliminate all electrical causes.

Q. Unable to eliminate all electrical causes?

A. That's correct.

Q. Okay.

A. Unable to eliminate all accidental causes. Shorting and arcing were found throughout the interior of the electrical box. Shorting was found to the wiring throughout the area of origin. The use of extension cords throughout the structure. There was evidence of previous electrical problems with the structure, and electrical outlets in the north end of the trailer did not work, indicating previous electrical problems.

When questioned by Mr. Robinett's trial counsel, Mr. Albus made the following remarks about the cause of the fire:

Q. You're a trained cause and origin investigator, correct?

A. Correct.

Q. Cause and origin are two different things?

A. True.

Q. Origin is just a location, and cause is what actually starts the ignition of a fire, correct?

A. That's correct.

Q. Okay, And having all of that information in mind and having done all of that investigation, it's your testimony that you came to no conclusion as to the cause of this fire; is that correct?

A. I came to no official conclusion.

Q. And you have no opinion as to the cause of this fire, that's what you told us?

A. Yes.

At the close of the trial, only the negligence count was submitted to the jury, which returned a verdict in favor of the Winklers in the amount of $10,000.00. Mr. Robinett then filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The trial court sustained Mr. Robinett's motion for judgment notwithstanding the verdict, stating in its order that the Winklers "failed to make a submissible case on the issue of causation."

In their sole point on appeal, the Winklers claim that they presented sufficient evidence on the issue of causation to make a submissible case. Therefore, they contend, the trial court erred in sustaining Mr. Robinett's mo-

tion for a judgment notwithstanding the verdict.

A judgment notwithstanding the verdict is appropriate only when the plaintiff has failed to make a submissible case. *McCulley v. State Farm Mut. Auto. Ins. Co.*, 668 S.W.2d 121, 122 (Mo.App.1984). A trial court should sustain a motion for a judgment notwithstanding the verdict only when all of the evidence and the reasonable inferences to be drawn therefrom are so strongly against the plaintiff's case that there is no room for reasonable minds to differ. *Bizzle v. Enterprise Leasing*, 741 S.W.2d 84, 85 (Mo.App. 1987).

In determining whether the Winklers made a submissible case, this court must consider the fact that the Winklers did not submit their case to the jury under the doctrine of *res ipsa loquitur*, even though the doctrine has been applied in similar circumstances. *Shannon v. Welch*, 858 S.W.2d 748, 751–752 (Mo.App.1993). To make a submissible case on their negligence claim, the Winklers had to establish the existence of a duty, a breach of that duty, and causation. *Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881, 886 (Mo. banc 1983).

The Winklers presented substantial evidence that, as a result of Mr. Robinett's retention of partial control of the leased premises for the purpose of making repairs, Mr. Robinett assumed a duty to make repairs and to keep the premises in a reasonably safe condition. *Harrison v. Roberts*, 800 S.W.2d 40, 42 (Mo.App.1990). The Winklers also presented substantial evidence that Mr. Robinett had notice of defects in the electrical system and breached his duty to make needed repairs. The Winklers testified that they informed him repeatedly of a problem with the electrical system in the mobile home, and that Mr. Robinett made no serious attempt to remedy the situation.

The Winklers, however, did not make a submissible case that Mr. Robinett's failure to fix the problem with the electrical system was the cause of the fire which destroyed the mobile home. To attribute the fire to that electrical problem and to Mr. Robinett's failure to correct it, the Winklers would have to prove by direct or circumstantial evidence, and the reasonable inferences therefrom, that the fire was electrical in origin. Such a showing would have been sufficient under *Henderson v. W.C. Haas Rlty. Management, Inc.*, 561 S.W.2d 382, 386 (Mo.App.1977), where, in a suit against a landlord for a breach of an implied warranty of habitability, this court held that a submissible case was made on the causation of a fire when the jury was given sufficient evidence from which to conclude that the fire was caused by some defect in the electrical wiring.

But the Winklers failed to offer substantial evidence of an electrical origin of the fire which destroyed their trailer home. The only expert testimony which the Winklers presented was that of Mr. Albus, who stated that the fuse box was in the area of the fire's point of origin. Mr. Albus made clear that there is a difference between the origin or location of the fire and the cause of the fire. Mr. Albus testified as to shorting, arcing and beading of wires in the fuse box, but gave no explanation of the significance of this evidence as related to the origin or cause of the fire. Mr. Albus never expressed an opinion that the fire was conclusively or even probably caused by any problem in the electrical system on the premises. Instead, he merely stated that he could not "eliminate" an electrical cause of the fire. Mr. Albus' conclusion on the cause of the fire, which he stated repeatedly, was that he had no opinion. Expert testimony that an act or omission of a defendant was a possible factor in causing a fire is not sufficient to make a submissible case. *Shackelford v. West Central Elec. Co-op., Inc.*, 674 S.W.2d 58, 62 (Mo.App.1984).

Mr. Albus' expert testimony aside, the only evidence of an electrical origin of the fire was circumstantial, i.e., the testimony of other witnesses about the electrical problems that preceded the fire. However, to make a submissible case on the issue of causation, such circumstantial evidence must fairly warrant the conclusion that the fire did not originate from some other cause. *Henderson*, 561 S.W.2d at 385. The testimony concerning the pre-existing electrical problems does not meet this evidentiary

burden, and the inconclusive expert witness testimony of Mr. Albus does not add a significant quantum of proof to establish a submissible case.

The judgment of the trial court is affirmed.

All concur.