Philip M. Hess, Judge
Introduction
June LaBarbera ("Plaintiff") appeals the trial court's grant of summary judgment in favor of Eleanora G. Pacanowski ("Defendant"). In 2000, Defendant leased a single-family residential property at 5231 Wilson Avenue (the "Property") in the City of St. Louis to Clifford Washburn. In August of 2010 there was a fire at the Property. Washburn and Plaintiff's daughter, Allison Garcia ("Decedent"), who was spending the night there, died. Plaintiff brought a wrongful death suit on behalf of Decedent claiming Defendant was negligent for failing to maintain operable smoke detectors in the Property that resulted in her daughter's death. The trial court granted summary judgment in Defendant's favor, finding Plaintiff could not show Defendant owed any duty to maintain the smoke detectors. We modify the judgment to correct a clerical error and affirm in all other respects.
Factual and Procedural Background
On August 22, 2013, Defendant died. On August 23, 2013, Plaintiff filed a one-count wrongful death negligence claim against Defendant alleging that on August 24, 2010, Decedent was sleeping at the Property when a fire started. Plaintiff alleged Decedent was not alerted the fire had started because the batteries had been removed from the smoke detectors in the Property. Plaintiff claimed that as a result Decedent was not awoken with enough time to exit the Property, and she died from smoke inhalation. Plaintiff alleged that Defendant was negligent because Defendant failed to maintain operable smoke detectors in the Property.
Plaintiff attempted to serve Defendant with a summons on multiple occasions but was unsuccessful because Defendant was deceased. On January 8, 2015, Plaintiff moved for appointment of a defendant ad litem pursuant to § 537.021.[1] On February 25, 2015, the trial court granted Plaintiff's motion and appointed John Malec as defendant ad litem for Defendant (the "DAL").
On June 30, 2015, the DAL filed its answer, and on September 28, 2016, the *906 DAL filed its motion for summary judgment arguing Plaintiff could not show Defendant owed any duty to Decedent to maintain operable batteries in the smoke detectors. Attached to the DAL's motion was Plaintiff's deposition, Defendant's daughter's deposition, and a certified copy of Chapter 25.52.060 of the Revised Code of the City of St. Louis. In his reply, the DAL also included an affidavit from Defendant's daughter, interrogatory and request for production responses, and a quitclaim deed for the Property as part of the summary judgment record.
In her deposition, Defendant's daughter testified she had been assisting her mother in renting the Property for several years. She testified that before she could rent the Property to a tenant she had to get an occupancy permit from the City of St. Louis. She said before the inspector came out to the Property she had to make sure the smoke detectors were in the appropriate rooms. She testified she always purchased new smoke detectors every time a new tenant moved into the Property.
She testified she rented the Property to Washburn in 2000. She explained that there was no written lease but she told Washburn if there was a problem to call her when it was minor as opposed to waiting until it was major. She said Washburn was more like family than a tenant. She testified Washburn would make repairs to the Property himself if he could, would landscape the Property, and would deduct his expenses from the rent.
She testified that Washburn called her the week before the fire and said he would have the rent the following week if she wanted to come by and pick it up. The following week she went to the Property but Washburn did not answer and she thought she smelled something burning so she called the fire department. She gave the fire department permission to break down the door and inside they found Decedent and Washburn dead. She testified she had a key to the Property but did not have it with her.
She testified she purchased smoke detectors for the Property and had them installed in 2000. She testified she put two smoke detectors upstairs and two downstairs. She never replaced the smoke detectors but she was not sure if the smoke detectors in the Property at the time of the fire were the same ones she purchased. She did not know if the smoke detectors were working at the time of the fire. She testified that every October she would ask Washburn if he wanted her to get batteries or if he had batteries. She said Washburn would always say he had taken care of it, and she assumed Washburn took care of the smoke detectors. In her affidavit, she reiterated that each October she would remind Washburn to replace the batteries in the smoke detectors and each year Washburn would tell her that he had taken care of it. She stated that during Washburn's tenancy she did not provide him with batteries for the smoke detectors, nor did she personally replace the batteries within the smoke detectors.
In Defendant's daughter's affidavit she further stated that while there was no written lease with Washburn, there was an oral agreement that if a repair was needed, Washburn was to call her. She stated that throughout Washburn's ten-year tenancy, the custom and practice was that Washburn would make improvements and/or repairs, then he would deduct the cost from his monthly rent and submit receipts with his rent payment. She stated she retained a key for the Property for emergencies only, or if Washburn became locked out or needed a spare key. She said that during Washburn's tenancy she never used the key to enter the Property and never entered the Property without the invitation and consent of Washburn. She explained that while she would occasionally *907 pick up the rent by stopping by the Property, this was not routine protocol as the rent was usually paid through the mail. On the occasions she picked up the rent at the Property, she did not enter the Property unless Washburn invited her in.
The trial court granted summary judgment in Defendant's favor, finding that Plaintiff could not show Defendant owed any duty to Decedent to maintain the smoke detectors. This appeal follows.
Standard of Review
The standard of review on appeal regarding summary judgment is essentially de novo. Foster v. St. Louis County , 239 S.W.3d 599, 601 (Mo. banc 2007). Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Id. We review the record in the light most favorable to the party against whom judgment is sought. State ex rel. Mo. Highway & Transp. Comm'n v. Dierker , 961 S.W.2d 58, 60 (Mo. banc 1998). Facts set forth by affidavit or otherwise in support of the motion are taken as true unless contradicted by the non-movant's response to the summary judgment motion. Id. The non-movant receives the benefit of all reasonable inferences from the record. Id. A defendant may establish a right to judgment by showing facts that negate any one element of the plaintiff's claim. Id.
Discussion
In Plaintiff's sole point on appeal, she contends the trial court erred in granting summary judgment because there is a genuine issue of material fact on whether Defendant retained partial control and general supervision over the Property. Specifically, Plaintiff argues that because Defendant's daughter had a key to the Property, inspected the Property, made offers to repair the Property, purchased smoke detector batteries for the Property, and offered to replace them, the trial court erred in finding Plaintiff could not show Defendant had a duty to maintain the smoke detectors. The DAL asserts that summary judgment was proper because Defendant did not retain the control necessary to impose a duty to make repairs.
Under Missouri law, landlords are generally protected from liability for personal injuries caused by a dangerous condition existing on the leased premises. Stephenson v. Countryside Townhomes, LLC , 437 S.W.3d 380, 384 (Mo. App. E.D. 2014). The recognized exceptions to the rule include: (1) a hidden dangerous condition; (2) where the injury occurs in a "common area" used by two or more tenants and/or landlord and tenants; and (3) where the landlord is contractually obligated to make repairs and has retained sufficient control over the premises. Id. Plaintiff contends the third exception applies.
The possession or control that must be shown to make a landlord liable is not to be found merely in the obligation of the landlord to make repairs or the right to enter the premises. Lemm v. Gould , 425 S.W.2d 190, 195 (Mo. 1968). "There must be something more-some additional fact or facts from which a jury could infer that under the agreement the tenant gave up and surrendered his right to exclusive possession and control and yielded to the landlord some degree or measure of control and dominion over the premises; some substantial evidence of a sharing of control as between landlord and tenant." Id. "It is sufficient that [the landlord] retained a general supervision over the premises for a limited purpose such as the making of repairs or alterations, and the right to enter the premises and make repairs upon his own initiative and responsibility." Id.
The retention of control by the landlord is an essential element of liability. Fitzpatrick v. Ford , 372 S.W.2d 844, 850 (Mo. 1963). This is because the foundation *908 of the landlord's duty is premised on his retention of control. Dean v. Gruber , 978 S.W.2d 501, 504 (Mo. App. W.D. 1998). Without sufficient evidence of the landlord's control, the landlord cannot be held liable in tort for negligently failing to make repairs. Woods v. Gould , 515 S.W.2d 592, 596 (Mo. App. W.D. 1968) ; see also Nenninger v. Trustees of Oran Life Tabernacle Church , 789 S.W.2d 530, 535 (Mo. App. S.D. 1990) ; Dean , 978 S.W.2d at 505. " 'Determination of whether the amount of control a landowner exerts is sufficient to incur liability turns largely on the extent to which the landowner permits the tenant to treat the premises as belonging to the tenant.' " Dean , 978 S.W.2d at 505 (quoting Richeson v. Sprinco, Inc. , 931 S.W.2d 507, 509 (Mo. App. 1996) ).
Here, viewing the record in the light most favorable to Plaintiff, we find that the DAL has shown that Defendant did not retain control over the maintenance of the smoke detectors and summary judgment for Defendant was proper. First, Plaintiff's reliance on the fact that Defendant's daughter retained a key to the Property is misplaced. Defendant's daughter's uncontradicted affidavit shows she kept the key for emergencies only and had never used the key to enter the Property during the entire duration of Washburn's tenancy. This does not support that Defendant retained control over the Property. See Erhardt v. Lowe , 596 S.W.2d 489, 491 (Mo. App. S.D. 1980) (finding that retaining a key did not establish as a matter of law that the landlord had possession or control where there was no indication landlord would use the key without the tenant's permission and no reason was shown why landlord retained the key).
Second, Plaintiff's assertion that Defendant inspected the Property is belied by the record. The record establishes that Defendant and Washburn agreed that he would call if any repairs were needed, and that it was the custom and practice for Washburn to make repairs and improvements himself and then deduct his expenses from this rent. This further shows that Defendant did not retain control over the Property. Rather, Washburn treated the Property like his own. See Dean , 978 S.W.2d at 505.
Third, while Defendant's daughter testified she purchased the smoke detectors and the batteries for the Property before Washburn moved in and would remind Washburn each October to replace the batteries in the smoke detectors, the uncontradicted evidence is that Washburn always assured Defendant he had taken care of it. Defendant never took it upon her own initiative or made it her responsibility to maintain the smoke detectors, which by law Washburn was responsible for.
Specifically, section 441.630(3) requires every occupant of a dwelling to exercise reasonable care "[t]o meet all obligations lawfully imposed upon the occupants of dwelling units by the code enforcement agency or the community [.]"[2] Chapter 25.52 of the Revised Code of the City of St. Louis provides:
It shall be responsibility of the owner to supply and install all required detectors. The owner shall be responsible for testing and maintaining detectors in *909 common stairwells. It shall be the responsibility of the tenant to provide and maintain functional batteries for each detector, to test and maintain detectors within dwelling units, and to notify the owner or authorized agent in writing of any deficiencies. The owner shall be responsible for providing each tenant with written information regarding detector testing and maintenance. (Ord. 59376 § 6, 1985.)
(Emphasis added).
Pursuant to the Revised Code of the City of St. Louis, Washburn had the responsibility to provide and maintain functional batteries for the smoke detectors and Defendant merely reminded Washburn of that duty every October. Everyone is presumed to know the law and that presumption applies to municipal ordinances. Schnuck Markets, Inc. v. City of Bridgeton , 895 S.W.2d 163, 168 (Mo. App. E.D. 1995) (citing Rose v. City of Riverside , 827 S.W.2d 737, 738 (Mo. App. W.D. 1992) ). "[T]he parties to a lease transaction to which such a housing code appertains 'must be conclusively presumed to [have] know[n] the relevant law.' " King , 495 S.W.2d at 77 (quoting Sachs Steel & Supply Co. v. St. Louis Auto Parts & Salvage Co. , 322 S.W.2d 183, 186 (Mo. App. 1959) ).
We find no facts that would allow a jury to infer Defendant retained control over the Property. Summary judgment for Defendant is proper. See Dean , 978 S.W.2d at 505 (finding landlord was entitled to judgment as a matter of law because there were no facts that would allow a jury to infer landlord's control of the premises where landlord did not retain a key, reserve the right to inspect the premises, except with permission of the tenant, and did not act on his own initiative with regard to entering the premises or making repairs).
Plaintiff contends that her case is similar to Harrison v. Roberts , 800 S.W.2d 40 (Mo. App. W.D. 1990). In Harrison , plaintiffs, husband and wife, entered into a written rental agreement to lease defendants' home. Husband was injured when the guardrail on the porch collapsed and he fell to the ground below. Plaintiffs sued for negligence, arguing that defendants retained control of the premises and were therefore liable. The case proceeded to trial, and a jury returned a verdict for plaintiffs, but the trial court granted defendants' motion for a judgment notwithstanding the verdict, finding plaintiffs failed to present evidence that defendants owed a duty of care to plaintiffs.
On appeal, the court reversed, finding that taking the evidence in the light most favorable to plaintiffs, defendants retained the right to partial control of the premises for the purpose of making repairs. Id. at 42. Specifically, the court found that defendants had made promises at the outset of the lease concerning repairs and maintenance, had made periodic inspections of the property, entered the house for the purpose of making repairs, made repairs to a portion of the porch, and took their actions both on their own initiative and in response to requests by tenants, without any prerequisite of the plaintiffs' consent. Id. In addition, the court highlighted testimony from the landlord that illustrated that he believed he retained the right to inspect and maintain the property. Id.
Plaintiff contends that her case is similar to Harrison because like in Harrison the landlord acted on her own initiative in purchasing the smoke detectors and by offering to replace them each October. We fail to see the factual similarities and find Harrison to be inapposite to this case. Unlike in Harrison , there was no evidence that Defendant inspected and repaired the Property on her own initiative without Washburn's consent. As set forth above, there was an oral agreement that Washburn *910 would call if any repairs were needed and would often make the repairs himself. That Defendant purchased the smoke detectors before Washburn's lease began and reminded Washburn about replacing the batteries each October did not impose a duty on Defendant to maintain the smoke detectors. Plaintiff's sole point is denied but we must address one final issue.
The trial court's judgment reflects Eleanora Pacanowski as the named party-defendant. Once the DAL was appointed, however, the DAL became the defendant and should have been substituted as the named party-defendant. The parties agreed at oral argument the judgment should be amended to reflect the DAL as the party-defendant. Pursuant to Rule 84.14[3] we have the power to give such judgment as the court ought to give and shall dispose finally of the case unless justice otherwise requires. Accordingly, we modify the judgment so that the named party-defendant is corrected to "JOHN MALEC, in his capacity as Defendant ad litem for Eleanora G. Pacanowski, Deceased, Defendant." See Wilkerson v. Williams , 141 S.W.3d 530, 536-37 (Mo. App. S.D. 2004) (modifying the judgment to reflect the defendant ad litem as the named party-defendant where the deceased defendant was listed as the defendant).
Conclusion
For the foregoing reasons, the judgment of the trial court is modified to reflect the DAL as the named party-defendant and is affirmed in all other respects.
Lisa P. Page, P.J. and Roy L. Richter, J. concur.

See § 537.021. All references to statutes are to RSMo (2000) unless otherwise indicated. Section 537.021 authorizes the appointment of a defendant ad litem in actions for damages in which the real party in interest is a deceased wrongdoer's liability insurer. Travis v. Contico Int'l, Inc. , 928 S.W.2d 367, 370 (Mo. App. E.D. 2013). The purpose of § 537.021 is to substitute the defendant ad litem for the formerly-required administrator of the estate where the liability insurer is the "real defendant." State ex rel. Hune v. Ryan , 771 S.W.2d 831, 832 (Mo. banc 1989). Any judgment against the defendant ad litem is binding on the insurer of the deceased wrongdoer to the same extent as if a personal representative had acted as the legal representative of the deceased wrongdoer. Litton v. Kornbrust , 85 S.W.3d 110, 117 (Mo. App. W.D. 2002). The defendant ad litem is merely a nominal defendant acting as a legal representative for the insured, and the liability insurer is the real defendant. Id.

Section 441.630(3) is part of The Enforcement of Minimum Code Standards law. "The Enforcement of Minimum Code Standards statute effectively 1) recognizes the minimum standards for occupancy of municipal housing codes as standards for the habitability of residential dwellings, 2) alters the common law no-repair rule by coercing repairs by the landlord or from his property to restore the tenant's occupancy to the minimum housing code standards for life, health and safety and 3) reads into every residential lease the minimum standards for occupancy of the applicable municipal housing codes." King v. Moorehead , 495 S.W.2d 65, 73-74 (Mo. App. 1973).

Missouri Supreme Court Rules (2017).